UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS SOCK, III,

       Petitioner,

                                      CASE NO. 05-CV-70379-DT
v.                                   JUDGE GERALD E. ROSEN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

JAN TROMBLEY,

       Respondent.
_____/

**REPORT AND RECOMMENDATION**

I.     RECOMMENDATION: The Court should grant in part and deny in part petitioner's request for a certificate of appealability. Specifically, the Court should grant a certificate of appealability with respect to petitioner's ineffective assistance of counsel claim, and deny the certificate with respect to his remaining claims.

II.    REPORT:

A.    *Procedural Background*

Petitioner Louis Sock, III, is a state prisoner currently confined at the Saginaw Correctional Facility in Freeland, Michigan. On February 2, 2005, petitioner filed an application for the writ of habeas corpus, challenging his state court convictions for second degree murder and mutilation of a dead body. Petitioner raised three grounds for relief: (1) ineffective assistance of counsel and improper denial of a continuance; (2) suppression of exculpatory evidence and improper admission of opinion testimony; and (3) denial of the right to confront the witnesses due to restrictions on cross-examination. On July 7, 2006, I filed a Report recommending that the Court deny the petition.

Specifically, I recommended that the Court conclude that each of petitioner's claims is without merit. On September 20, 2006, the Court entered an order accepting my recommendation. On October 16, 2006, petitioner filed a notice of appeal, and on October 18, 2006, he filed a motion for a certificate of appealability. Pursuant to 28 U.S.C. § 2253(c), petitioner may appeal only if he is first granted a certificate of appealability. For the reasons that follow, the Court should grant a certificate of appealability with respect to petitioner's ineffective assistance of counsel claim, and deny the certificate with respect to petitioner's remaining claims.

B.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*,

463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).  Accordingly, with respect to each issue, the Court must "either issue a certificate of appealability or state why a certificate should not issue."  FED. R. APP. P. 22(b)(1).

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id*. at 486.

C.     *Analysis*

   1.     *Ineffective Assistance of Counsel Claim (Claim I)*

In his ineffective assistance claim, petitioner argues that counsel was ineffective for failing to: call seven witnesses who could have testified to seeing the victim after the date on which the prosecution contended she was murdered; present evidence that Warren Ivery lied concerning seeing a human bone in the fire at petitioner's Hamburg house; present evidence contradicting the prosecution's theory of events between the two police searches at the Hamburg home.  For the reasons explained in my previous Report, I suggested, and the Court agreed, that petitioner could

not demonstrate that he was prejudiced by counsel's alleged failures. *See* R&R, dated 7/7/06, at 22-30. While I do not doubt this conclusion, in light of the evidence at trial it cannot be said that this determination is beyond debate among reasonable jurists. The prosecution's case was based solely on circumstantial evidence, and the evidence cited by petitioner attacks this circumstantial case in several different ways. While I concluded that the omitted evidence was not sufficient to create a reasonable probability that the outcome of the proceeding would have been different had it been presented to the jury, in light of the nature of that evidence and the evidence presented by the prosecution, this conclusion is open to reasonable debate. Accordingly, the Court should grant a certificate of appealability with respect to petitioner's ineffective assistance of counsel claim.

   2. *Exculpatory Evidence Claim (Claim II)*

   With respect to the exculpatory evidence claim, however, petitioner cannot show that the Court's resolution of this claim is debatable among reasonable jurists. In this claim, petitioner points to three categories of evidence which he contends were suppressed by the prosecution: (1) police and private investigator notes of witness interviews; (2) evidence of a threat that the victim's father made to kill petitioner if petitioner was responsible for his daughter's death; and (3) a memo from the Michigan Department of Corrections to the police which petitioner claims proves that the police knew he was in Jackson Prison between the two searches of the Hamburg home, contradicting the testimony of petitioner's son that he visited his father in the Macomb facility, where his father instructed him to remove the trash cans containing the victim's remains from the property.

   As explained in my prior Report, petitioner has failed to establish that the investigative notes of the police and the private investigator contained any exculpatory information. The officer and investigator, as well as the prosecutor, all stated under oath that the notes contained no exculpatory

information. *See* R&R, at 38-39, 41. Petitioner contends that "[t]his ruling is debatable, if not dubious," because the assertions of the police officer and prosecutor are insufficient to resolve this claim. Pet'r's Mot. for Certificate of Appealability, at 12. Contrary to petitioner's argument, however, this is precisely how *Brady* works. Under *Brady* and its progeny, "it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (footnote omitted). Because there is no evidence that the prosecutor's and police officer's assurances to the court were incorrect, the Court's resolution of this issue is not debatable among reasonable jurists. Further, it is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004). There is no question that petitioner knew of the witnesses and that the private investigator had conducted an investigation. Nor is there any evidence that petitioner could not have interviewed the witnesses or called the investigator as a witness at trial. Thus, there is no debate that petitioner had knowledge of the essential facts permitting him to take advantage of any exculpatory information these witnesses possessed. *See United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990).

With respect to the threats made by the victim's father, it is not debatable that petitioner failed to show this evidence as material under *Brady*. While the threat would have demonstrated the

bias of the victim's father, this bias was adequately established by the testimony regarding petitioner's abuse of and threat to kill the victim. Further, even if it would have provided some marginal impeachment value, the victim's father testified only with respect to the abuse of and threats made to the victim by petitioner, facts which had been well established by other witnesses. Thus, the Court's resolution of this issue is not debatable among reasonable jurists.

Finally, with respect to the memo documenting petitioner's location in the Michigan prison system at the times the police searched the Hamburg home, petitioner cannot show that this information was suppressed. It is clear that petitioner was aware of the circumstances of his own incarceration, and those had knowledge of the essential facts permitting him to take advantage of this information. Thus, the Court's resolution of the *Brady* claim with respect to this evidence is not debatable among reasonable jurists. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief with respect to his *Brady* claim.

    3.    *Opinion Testimony Claim (Claim II)*

Also in his second claim, petitioner contends that he was denied a fair trial by the testimony of Lt. Peterson which gave Lt. Peterson's opinion that petitioner was guilty. As explained in my Report, to be entitled to habeas relief on this claim petitioner must show not only that the evidence was erroneously admitted, but also that its admission resulted in a denial of due process, *see Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004), that is, that the admission of the evidence offended "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977). In light of the evidence presented at trial, the brevity of Lt. Peterson's allegedly improper testimony, and the fact that the testimony was not highlighted for the jury or referenced later by the prosecutor, petitioner cannot

show that the Court's conclusion–that the admission of this evidence did not deprive petitioner of a fair trial–is debatable among reasonable jurists. Accordingly, the Court should deny the certificate of appealability with respect to this claim.

    4.    *Cross-Examination Claim (Claim III)*

Finally, in his third claim petitioner argues that the trial court denied him his Sixth Amendment right to confront the witnesses against him when it restricted cross-examination concerning the victim's behaviors and life style. While the trial court did restrict some questioning on these matters on the basis of the prosecutor's hearsay and relevance objections, petitioner's counsel was able to elicit evidence regarding these matters. As explained in my prior Report:

> Jennifer Minnella testified on cross-examination and redirect examination that she and her father stated in the missing persons report that the deceased was an alcoholic and a drug abuser. Trial counsel elicited through Shofield that Minnella had an alcohol abuse problem and that she kept changes of clothing in her car. Pyllis Watkins testified on cross-examination that Minnella would go off for weekends with different boyfriends. And the prosecutor conceded the deceased's drug and alcohol problems in closing argument.

R&R, at 46-47 (citations to trial transcript omitted).

The Supreme Court has explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *California v. Green*, 399 U.S. 149, 166 (1970). Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on

cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).

Here, notwithstanding the trial court's restrictions, defense counsel was able to elicit substantially all of the information he sought to elicit concerning the victim's habits and life style. Further, the bulk of the questions were either in the nature of substantive rebuttal evidence, or general impeachment of the witnesses. The cross-examination right protected by the Confrontation Clause is limited to cross-examination directed at eliciting a witness's bias or motive to testify falsely; it does not protect cross-examination designed to elicit substantive evidence or facts going to a witness's general credibility. *See Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000). For these reasons, the Court's conclusion on this claim is not debatable among reasonable jurists.

D.   *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part petitioner's motion for a certificate of appealability. Specifically, the Court should grant a certificate of appealability with respect to petitioner's ineffective assistance of counsel claim, and should deny the certificate with respect to petitioner's other claims.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/20/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 20, 2006.

s/Eddrey Butts
Case Manager